The **NATIONAL NUTRITIONAL FOODS ASSOCIATION and Solgar Co., Inc., Plaintiffs,**

v.

**Jere E. GOYAN, Commissioner of Food and Drugs and Food and Drug Administration, Defendants.**

**No. 80 Civ. 3709 (MP).**

United States District Court, S. D. New York.

July 24, 1980.

John S. Martin, Jr., U.S. Atty. for the Southern District of New York, by Stephen A. Dvorkin, Asst. U.S. Atty., New York City, and Donald Segal, U.S. Food and Drug Administration, Rockville, Md., for defendants.

Bass, Ullman & Lustigman, New York City, by Milton A. Bass, Sheldon S. Lustigman, Jacob Laufer, New York City, for plaintiffs.

## DECISION

MILTON POLLACK, District Judge.

Plaintiffs have applied for a preliminary injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, enjoining the Food and Drug Administration ("FDA") and its Commissioner from enforcing a regulation entitled "Protein Products; Warning Labelling", 21 C.F.R. § 101.17, as published at 45 Fed.Reg. 22913–14 (April 4, 1980), which is scheduled to go into effect August 4, 1980. This regulation requires that warning labels be put on certain food products deriving 50% or more of their caloric value from protein; the warning required varies according to the use for which the product in question is promoted, but in the case of protein products promoted for use in weight reduction the warning includes the statement that "Very low calorie protein diets . . . may cause serious illness or death."

The substance involved in this dispute is not a toxic product.

For the reasons shown hereafter a preliminary injunction will issue postponing the effective date of the regulation until September 4, 1980 and until such further time as the Court may order. A trial of the merits is set down for August 18, 1980 in Courtroom 1306 at 10:30 A.M.

Plaintiffs (a trade association of producers of concentrated protein products, and a particular manufacturer thereof argue that the ominous and forbidding character of the warnings required—in particular the death warning—is unjustified and irreparably damaging to the marketability of concentrated protein products. Plaintiffs contend that the regulation in question exceeds FDA's statutory authority, is arbitrary and discriminatory, and has been promulgated without affording plaintiffs and the public at large a required and meaningful opportunity to participate in the rulemaking process.

Defendants argue in opposition to the motion that plaintiffs have not made the requisite showings of irreparable harm, substantially meritorious questions, and a balance of hardships tipping in their favor to entitle them to preliminary relief.

*Events leading to the regulation in question*

Sometime in 1977, FDA began receiving reports of death and serious illness associated with the use of very low calorie liquid protein diets. FDA proceeded for the next two and a half years to study the role that the use of concentrated protein products played in these incidents. At the end of this investigatory period, it appears that FDA was unable to find any causal relationship between the use of protein concentrates per se and the reported deaths, and that it concluded instead that the "pathologic pattern of these deaths was highly suggestive of death by starvation." 45 Fed. Reg. 22907 (April 4, 1980).

FDA concedes that the protein products at issue are themselves of unquestioned safety and nutrition, and "does not contend that protein concentration, per se, is one of the causes of the problems" that the regulation is intended to remedy. FDA also concedes that the last reported death from "starvation" dietary use of protein products occurred in the Spring of 1978, some two years ago. This lends considerable support to plaintiffs' contention that the deaths resulted from a fad diet (which was not promoted by the manufacturers of the product) that arose some years back—a fad that has now subsided.

Nonetheless, FDA promulgated the regulation at issue, purportedly on the ground that:

In light of the evidence of the risks to health associated with the use of protein products in very low calorie diets, failure to warn consumers of those risks on the label of the protein products constitutes omission of a material fact about the products. Omission of that fact renders the label for the products "false or misleading" and the products, therefore, misbranded [under 21 U.S.C. § 343(a)].

To be entitled to preliminary injunctive relief, a plaintiff must make a showing of "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward" plaintiff. *Jack Kahn Music Co. v. Baldwin Piano & Organ Co.*, 604 F.2d 755, 758 (2d Cir. 1979).

■ In this case, plaintiff has certainly raised substantial questions concerning the propriety and validity of FDA's promulgation of the regulation in question. In order for a regulation not to be arbitrary, capricious or discriminatory, it must be sustainable on the administrative record, *Camp v. Pitts*, 411 U.S. 138, 143, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); moreover, a "regulation perfectly reasonable and appropriate in the face of a given problem may be highly capricious if that problem does not exist." *Chicago v. F.P.C.*, 458 F.2d 731, 742 (D.C. Cir. 1971), *cert. denied*, 405 U.S. 1074, 92 S.Ct. 1495, 31 L.Ed.2d 808 (1972).

■ Thus, putting aside the substantial points raised by plaintiff concerning the procedures followed by FDA, it is seriously questionable and requires evidentiary support which has not been furnished that, despite the absence for two years of any deaths attributed to "starvation" dietary use of protein products, a "death warning" is required to prevent a seemingly safe food product from being "misbranded". This is particularly so where there is lacking any evidentiary foundation of a causal relationship between the protein products and the deaths that did occur, or any evidence before the Court that the producers of the goods in question promoted or were otherwise responsible for the abuse of the products that supposedly necessitated the regulation. Moreover, it is one thing to require publication of notice of a hazard and quite another to publish a death warning.

Plaintiffs have also demonstrated that the balance of hardships tips in favor of granting preliminary injunctive relief. It has taken FDA two and a half years to issue the regulation in question, and in that time the problem that was sought to be addressed would seem to have abated considerably, if not entirely. The extra delay of approximately one month that will be required for this Court to pass on the validity of the regulation will cause slight, if any, inconvenience or hardship to FDA or to the public interest. On the other hand, in the absence of a stay of the regulation, plaintiffs will be put to the cost not only of re-labelling their products but of the loss of business and competitive edge that may reasonably be expected to follow from the appearance of a warning against death or serious illness on the label of their goods.

The Court finds and concludes that plaintiffs have made the requisite showing of irreparable harm. FDA concedes that the regulation in question is unprecedented in requiring manufacturers of a product acknowledged to be inherently unharmful to affix a warning of death on the product's label. The impact of such a warning will certainly be magnified by the fact that we are dealing here with products designed for consumption—and, again, concededly safe for that purpose. That plaintiffs will have a more difficult time marketing their product and will be hurt competitively if required to comply with the regulation is unquestionable, and a prospective invalidation of the regulation or of the extreme form of notice promulgated thereunder would be unlikely to undo any damage that might be done by unjustified implementation of the regulation and the form of notice now required.

■ This Court is mindful of the fact that preliminary injunctions are an extraordinary remedy which should not be routinely granted. It is also mindful of the fact

 

that a plaintiff's burden is especially heavy where the public interest is implicated.* However, it is the very lack of any apparent likelihood of damage to the public interest that lends substance to plaintiff's claims herein. This is a case in which equity is best served by maintaining the status quo for the short time the Court needs to obtain the evidentiary support for and to address the issues raised.

Accordingly, defendants should be and hereby are enjoined from enforcing the regulation entitled "Protein Products; Warning Labelling," 21 C.F.R. § 101.17, as published in 45 Fed.Reg. 22913–14 (April 4, 1980), and the effectiveness of that regulation is hereby suspended and stayed until September 4, 1980 and until such further time as may be fixed by order of the Court. The parties are directed to prepare for a full hearing on the merits to be held August 18, 1980 at 10:30 A.M.

The foregoing shall constitute the findings of fact and conclusions of law required by Rule 52(a) Federal Rules of Civil Procedure.

SO ORDERED.

---

* FDA notes that there is a suggestion in *Medical Society of New York State v. Toia*, 560 F.2d 535, 538 (2d Cir. 1977) that where the grant of interim relief may adversely affect the public interest a plaintiff should be required to make a showing of probability of success on the merits. Whether or not this is always so, the Court is satisfied that plaintiffs have shown not only serious questions but a sufficient probability of success on the merits.